UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

**LEVANTE WASHINGTON,**

    Plaintiff,

  -vs-              Case No. 13-C-1080

**ARNE DUNCAN, Secretary,**
**United States Department of Education,**

    Defendant.

## DECISION AND ORDER

  Pro se Plaintiff Levante Washington (Washington) appeals the decision by Arne Duncan (Duncan), Secretary of the United States Department of Education (DOE), denying administrative discharge of his student loans on the basis of disqualifying status. Washington was given leave to proceed *in forma pauperis* on this action for judicial review pursuant to 5 U.S.C. § 706(2)[1]

---

[1] Sections 706(2)(A) and (B) provide:

To the extent necessary to decision and when presented, the reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action. The reviewing court shall

. . . .

(2) hold unlawful and set aside agency action, findings, and conclusions found to be--

(A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;

(B) contrary to constitutional right, power, privilege, or immunity;

of the Administrative Procedure Act (APA), and his action includes Fifth Amendment substantive and procedural due process claims relating to those denials. Mindful of Washington's pro se status, the Court has liberally construed his pleadings.

By a May 8, 2015, Decision and Order (ECF No. 30), the Court informed the parties that it would adopt this District's procedures for review of Social Security Disability Appeals[2] in this action. Duncan filed the administrative record, and the briefing of this matter is complete. (ECF Nos. 32-1, 35, 38, 39.) Consequently, the matter is ready for resolution.

The APA sets the appropriate standard of review for challenges to final federal agency action: whether that agency action was "arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). In reviewing an agency decision under this standard, it is well-settled that the court's inquiry is ultimately narrow and limited to "whether the [Secretary's] decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment." *Citizens to Preserve*

---

. . . .

In making the foregoing determinations, the court shall review the whole record or those parts of it cited by a party, and due account shall be taken of the rule of prejudicial error.

[2] See *Procedures in Social Security Disability Appeals,* available as "Social Security Procedures.pdf" under Forms, Social Security, Social Security Complaint, on the Eastern District of Wisconsin's website, http://www.wied.uscourts.gov.

*Overton Park, Inc. v. Volpe,* 401 U.S. 402, 416 (1971), *overruled on unrelated grounds by Califano v. Sanders*, 430 U.S. 99, 105 (1977).  The court "is not empowered to substitute its judgment for that of the agency." *Id*. Rather, the agency's decision must be affirmed if it is rationally based. *Bowman Transp., Inc. v. Ark. Best Freight Sys., Inc.,* 419 U.S. 281, 285 (1974).

Washington maintains that Duncan rendered arbitrary and capricious decisions and cannot evade the violation of Washington's procedural due process rights as provided in 34 C.F.R. §§ 685.215(a)(iii) and his substantive due process property rights.  (ECF No. 35.)  Duncan asserts that Washington has provided no basis for overturning the decisions and the denial of Washington's applications for discharge of his student loans should be upheld. In reply, Washington states that given the narrow scope of review under the APA, he would like to assert rights pursuant to 42 U.S.C. § 1983.  (Br. Opp'n Denial Student Loan Discharge 1, ECF No. 38.)  However, under the APA, claims arising out of alleged constitutional violations are reviewed de novo, *see McNary v. Haitian Refugee Ctr.,* 498 U.S. 479, 493 (1991),[3] and therefore Washington's due process claims will be considered under the APA.[4]

---

[3] Washington has acknowledged this standard. (*See* Br. Opp'n Def. Mot. Dismiss, 2-3, ECF No. 16.)

[4] Section 1983 authorizes an injured party to assert a claim for relief against another who violates the claimant's federally protected rights.  There are two elements for a prima facie case in a § 1983 action: 1) deprivation of a federal right; and 2) the person who deprived the claimant of that right acted under color of state law or

- 3 -

Washington has filed materials outside the record — an undated page of Cardinal Stritch University (Stritch) information stating that more than 96% of its students are in jobs within a year of graduation; a form entitled "Your Great Lakes-Serviced Student Loan Accounts Anticipated to Default 30 Days from the Date of this Letter," indicating an August 29, 2015, anticipated default date for Washington's loans totaling $43,386.97; and a page from a 2015 online application for Stritch. (ECF Nos. 38-1, 39-2, 40-1.)

As the Court's May 8 decision indicated, judicial review of an agency's decision is generally limited to the administrative record prepared in connection with that decision. 5 U.S.C. § 706; *Fla. Power & Light Co. v. Lorion,* 470 U.S. 729, 743-44 (1985). Nonetheless, courts can look beyond the administrative record when (1) evidence suggests bad faith or improprieties may have influenced the decisionmaker; (2) it appears that the agency has relied on substantial records and materials not included in the record; or (3) the procedures utilized and factors considered by the decisionmaker require further explanation for effective review. *Sokaogon Chippewa Cmty. v. Babbitt,* 929 F. Supp. 1165, 1177 (W.D. Wis. 1996) (citing *Overton Park,* 401 U.S. at 420); See *also USA Grp. Loan Servs., Inc. v. Riley,* 82 F.3d 708, 715 (7th Cir. 1996). However, a party must make a "strong showing" that one of

---

municipal ordinance. *See West v. Atkins,* 487 U.S. 42, 48 (1988). This case does not involve any person who acted under color of state law or municipal ordinance. Duncan is a federal official and acts under federal law.

- 4 -

these exceptions applies before a court will allow extra-record inquiry. *Id*. None of the documents Washington proffers make the strong showing that could trigger an extra-record inquiry. Therefore, those documents will not be considered in reviewing the administrative decision. Because the documents do not contain information that is arguably relevant to Washington's due process claim they also have not been considered with respect those claims.

Section 1087(c)(1) of Title 20 of the United States Code addresses the discharge of student loans by the Secretary of Education, in pertinent part, as follows:

> *If a borrower who received, on or after January 1, 1986, a loan made, insured, or guaranteed under this part and the student borrower*, . . . is unable to complete the program in which such student is enrolled due to the closure of the institution *or if such student's eligibility to borrow under this part was falsely certified by the eligible institution . . . , then the Secretary shall discharge the borrower's liability on the loan (including interest and collection fees) by repaying the amount owed on the loan* and shall subsequently pursue any claim available to such borrower against the institution and its affiliates and principals or settle the loan obligation pursuant to the financial responsibility authority under subpart 3 of part G of this subchapter.

(Emphasis added.)

34 C.F.R. § 685.215(a)(1)(iii) provides in pertinent part:

(a) Basis for discharge.

(1) False certification. The Secretary discharges a borrower's . . . obligation to repay a Direct Loan in accordance with the provisions of this section if a school falsely certifies the eligibility of the borrower . . . to receive the loan. *The Secretary considers a student's eligibility to borrow to have been falsely certified by the*

- 5 -

>
> *school if the school—*
>
> . . .
>
> *(iii) Certified the eligibility of a student who, because of a* physical or mental condition, age, *criminal record,* or other reason accepted by the Secretary, *would not meet the requirements for employment (in the student's State of residence when the loan was originated) in the occupation for which the training program supported by the loan was intended.*

(Emphasis added).

Relevant case law interpreting the forgoing statutory provision and/or regulation is limited to a few non-binding district court decisions. One of those decisions, *Johnson v. U.S. Dept. of Educ.,* 580 F. Supp. 2d 154, 157 (D.D.C. 2008), observes that the regulation contemplates discharges only for "a student who because of a . . . criminal record . . . would not meet the requirements for employment (in the student's State of residence when the loan was originated) in the *occupation* for which the *training program* supported by the loan was intended." In other words, *Johnson* addresses programs that provide training for specific occupations with identified employment requirements. *Id.*

Section 685.215(c) further sets forth the requirements for a borrower to qualify for a discharge, which include submitting to the Secretary a written request and a sworn statement in which the factual assertions must be true. Section 685.215(c)(1) states:

- 6 -

> In the case of a borrower requesting a discharge based on defective testing of the student's ability to benefit, the borrower must state that the borrower . . . -- (i) Received a disbursement of a loan, in whole or in part, on or after January 1, 1986 to attend a school; and (ii) Received a Direct Loan at that school on the basis of an ability to benefit from the school's training and did not meet the eligibility requirements described in 34 CFR part 668 and section 484(d) of the Act, as applicable.

## Administrative Record

Washington received student loans for programs in e-commerce or web administration at Milwaukee Area Technical College (MATC), which he attended between August 2002 and May 2004; and for a degree in business administration at Stritch, which he attended between August 2004 and August 2008. In May 2005, Washington requested discharge of those loans based on false certification due to a disqualifying status — a criminal record that would prohibit him from getting a job in an occupation for which his programs of study were intended. (Admin. R. 000005-6, ECF No. 32-1.) He indicated that he had a criminal record but that prior to the origination of the loans, neither school asked him whether he had a criminal record, nor did he inform either school of that record. (*Id.*) The DOE informed Washington that his submission and documentation were insufficient and provided him an opportunity to correct the deficiencies. (*See* Admin. R. 000003.)

Washington refiled his applications adding an affidavit averring that he diligently sought employment but was unable to obtain full-time

- 7 -

Case 2:13-cv-01080-RTR   Filed 01/26/16   Page 7 of 13   Document 41

employment in any field or at any salary or responsibility level after completing his degrees from MATC and Stritch. (*Id*. at 000011-13.) Washington also provided copies of Wis. Stat. §§ 111.322 through 111.337 (2007-09), which are part of the Wisconsin Fair Employment Act (WFEA) prohibiting discrimination based on an individual's criminal record; an article by Harry J. Holzer, Steven Raphael, & Michael A. Stoll, *How Willing Are Employers to Hire Ex-Offenders?,* 23 Faces, no. 2 (Summer 2004) 40-43; and evidence of his felony convictions for two 1994 charges for robbery in violation of Wis. Stat. § 943.32(1)(b). (Admin. R. 000014-20.) His request for discharge was denied in July 2010 because he had not provided documents to support a disqualifying status at the time of enrollment to either school. (*Id*. at 000009.)

Washington reapplied for discharges in August 2010, refiling the same documentation and an August 30 memorandum, the July 16 denial form, and a copy of the state court docket sheet showing that he entered a plea to the offenses in November 1994 and that judgment was entered in January 1995. (*Id*. at 000026-39.) The discharge requests were again denied in September 2010 because Washington had not provided a state statute status at the time of enrollment that barred employment in the field of study. (*Id*. at 000023.)

In October 2011 Washington reapplied for the discharges, largely resubmitting the materials from his prior applications and adding a memorandum stating that he had provided new information. (*Id.* at 000044-

- 8 -

Case 2:13-cv-01080-RTR   Filed 01/26/16   Page 8 of 13   Document 41

51.) His discharge requests were denied in November 2010 because he did not inform the school of his disqualifying status at the time of enrollment. (*Id.* at 000042.)

## Analysis

Review of the administrative record demonstrates that Washington has shown his robbery convictions predated his MATC and Stritch student loans. However, that is not sufficient to meet the standard for loan discharge in 34 C.F.R. § 685.215(a)(1)(iii). Washington has not established that he informed either school of his criminal convictions before they extended the loans to him. Thus, he has not shown that either school falsely certified his eligibility for employment, and that the July and November 2010 decisions denying his discharge applications on that ground were arbitrary and capricious.

With respect to the September 2010 denial, Washington has failed to establish how his robbery convictions prohibited him from being employed in Wisconsin (where he resided when he obtained the loans) in the occupation for which he was training; that is, e-commerce or web administration at MATC and/or business administration at Stritch. Washington provided the DOE with WFEA excerpts containing exceptions to the general rule prohibiting employment discrimination based on an individual's criminal record. He cites the provision which allows consideration of a criminal conviction if circumstances of the conviction are substantially related to the circumstances

- 9 -

of employment.[5] (Admin. R. 000014-15, 000028-29, 000048-49.) He also submitted an article regarding employer willingness to hire ex-offenders (*see id* at 000016-19, 000030-33). However, none of these materials establish a Wisconsin state statute that would preclude his employment in the fields indicated. (See *id.* at 000027 (not being able to find employment is not the requirement for discharge)). Washington has not demonstrated that Duncan was arbitrary or capricious in concluding that Washington had not cited any statute in force at the time the loans were taken out that prohibited him from being employed the fields of e-commerce, web administration, or business administration, which is what 34 C.F.R. § 685.215(a)(1)(iii) requires.

In sum, Duncan found that Washington had not met the requirements for such discharge. (*See id.* at 000009, 000023, 000042.) While Washington submitted evidence of criminal convictions, the record does not establish that he disclosed any conviction to MATC or Stritch. Nor did he identify any Wisconsin statute that would prohibit employment in e-commerce, web

---

[5] In addressing the nature of the inquiry of whether the circumstances of the conviction "substantially relate" to the circumstances of employment, the Wisconsin Supreme Court concluded the language is ambiguous but that the legislature intended to balance society's competing interests in rehabilitating convicted criminals and protecting them from employment discrimination, with society's interest in protecting its citizens. *Cty. of Milwaukee v. LIRC,* 139 Wis.2d 805, 814, 823-24, 407 N.W.2d 908, 913-15 (Wis. 1987). The court observed that employment is a vital step in the rehabilitative process, but that the legislature has determined that attempts at employment will not be forced under circumstances where repetitive criminal behavior is likely. *Id.* at 915-16. Moreover, courts are to liberally construe the law in order to effectuate its purpose of providing employment for individuals who have been convicted of crimes without requiring employers to assume the risk of employing individuals whose conviction records demonstrate a propensity to commit similar crimes. *Id.*

- 10 -

administration or business administration.  Duncan considered the relevant factors required for discharge based on false certification due to disqualifying status, and his decisions were rationally based. Therefore, Duncan's denials of Washington's discharge requests were not arbitrary or capricious.

Duncan has not specifically responded to Washington's Fifth Amendment due process claims.  The procedural due process requirement focuses on processes, and prohibits the government from depriving an individual of life, liberty or property in an unfair manner.  *See Mathews v. Eldridge,* 424 U.S. 319, 348 (1976).  Washington contends that there was a procedural due process violation because the identity of the DOE decision-maker was not provided and he or she used some type of subjective criteria in the decision-making process.  (Pl. Br. ¶ 2, ECF No. 35.)

The essential elements of due process are notice and an opportunity to respond.  *See Cleveland Bd. of Educ. v. Loudermill,* 470 U.S. 532, 546 (1985). Due process, however, is a flexible concept and the application of due process varies "as the particular situation demands." *Mathews,* 424 U.S. at 334.  In assuring adequate protection, a court must consider the private interests affected; "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards;" and the government's interest.  *Id.* at 335. Washington has not presented evidence that the decision-maker used any

- 11 -

subjective criteria.  Further, any person who worked on Washington's discharge request was acting on behalf of the Secretary of Education; the only entity whose decision this Court is authorized to review.  Washington has not established a procedural due process violation.

Washington also posits a substantive due process violation which precludes the government from engaging in conduct that "shocks the conscience" or interferes with rights implicit in the concept of ordered liberty. *United States v. Salerno,* 481 U.S. 739, 746 (1987).  "Substantive due process is admittedly an 'amorphous' concept." *Bettendorf v. St. Croix Cty.,* 631 F.3d 421, 426 (7th Cir. 2011) (citation omitted).  "'It is perhaps for this reason that its scope remains "very limited."' *Id.* (citation omitted).

To state a substantive due process claim, Washington must allege an underlying life, liberty or property interest that is protectable.  *See Zorzi v. Cty. of Putnam,* 30 F.3d 885, 895 (7th Cir. 1994).  As a case of first impression, a district court recognized a property interest in a student loan disability discharge. *See Higgins v. Spellings*, 663 F. Supp. 2d 788, 794-95 (W.D. Mo. 2009).  However, in that case the court emphasized that both plaintiffs were initially notified by the DOE that they were permanently disabled.  Unlike the *Higgins* plaintiffs, Washington was not ever notified that he satisfied the criminal conviction discharge criteria.  Moreover, assuming that he had a property interest in discharge, he has not presented facts suggesting that any

of Duncan's decisions to deny those discharges were conscience-shocking. *See Bettendorf*, 631 F.3d at 426-27 (regarding revocation of commercial zoning designation); *See also Tun v. Whitticker*, 398 F.3d 899, 902-03 (7th Cir. 2005) (collecting cases).

Since Washington has not shown that Duncan's denials of Washington's applications to have his student loans discharged based on false certification/disqualifying status as authorized by 34 C.F.R. § 685.215(a)(1)(iii) were arbitrary, capricious, or an abuse of discretion, or that procedural or substantive due process was violated, the denials must be upheld.

**NOW, THEREFORE, BASED ON THE FOREGOING, IT IS HEREBY ORDERED THAT:**

Washington's request for judicial review remanding this action for further proceedings is **DENIED;**

Duncan's final decision denying Washington's request for a discharge of his student loan is **AFFIRMED**;

This action is **DISMISSED**;

The Clerk of Court is **DIRECTED** to enter judgment accordingly;

Dated at Milwaukee, Wisconsin, this 26th day of January, 2016.

**BY THE COURT:**

*[signature: Rudolph T. Randa]*

**HON. RUDOLPH T. RANDA**
**U.S. District Judge**